IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PATRICK LAKEDRICK SIMPSON                                                      PLAINTIFF

v.                                                    CIVIL ACTION NO. 1:13cv556-MTP

BRENDA SIMS, ET AL.                                                           DEFENDANTS

<u>OPINION AND ORDER</u>

THIS MATTER is before the Court on the Motion for Summary Judgment [54] filed by
Defendants Brenda Sims, Hubert Davis, Ronald King, and Joy Ross; and the Motion for Partial
Summary Judgment [56] filed by Plaintiff Patrick Simpson. After careful consideration of the
motions, the entire record, and the applicable law, the Court finds that Defendants' Motion [54]
should be GRANTED IN PART and DENIED IN PART, and that Plaintiff's Motion [56] should be
DENIED.

<u>BACKGROUND</u>

Plaintiff Patrick Simpson, proceeding *pro se* and *in forma pauperis*, filed this civil rights
action pursuant to 42 U.S.C. § 1983 on or about September 19, 2013.[1] Simpson is a post-conviction
inmate currently incarcerated at Wilkinson County Correctional Facility. However, the alleged
events giving rise to this lawsuit occurred while Simpson was housed at South Mississippi
Correctional Institution ("SMCI"), a state prison that is operated by the Mississippi Department of
Corrections ("MDOC").

Simpson's claims and requested relief were clarified and amended through his sworn

---

[1]*See* Complaint [1] at 13.

testimony at a *Spears*[2] hearing held on July 2, 2014.[3] Simpson alleges acts of deliberate indifference to his medical needs, lack of due process in a disciplinary hearing, and the failure to protect him from harm.  The undersigned will discuss each claim more fully below.

First, Simpson alleges that on May 15, 2013, he was attacked by fellow SMCI inmate Wayne Sanders. According to Simpson, Sanders later informed him that Defendant Brenda Sims, who is a correctional officer at SMCI, specifically ordered the attack. Simpson alleges that Defendant Sims was deliberately indifferent to his injuries, including a laceration on his right eye and a fractured nose, that he suffered as a result of the attack. Although the injuries later healed, Simpson alleges that Sims initially refused to send him to the medical unit. Simpson was taken to the medical unit the next morning.[4]

Next, Simpson alleges that he received a Rule Violation Report ("RVR") relating to the May 15 incident, despite the fact that he did not instigate the attack. He alleges that Sanders did not receive an RVR. Simpson alleges that the disciplinary hearing later held before hearing officer Joy Ross violated his due process rights. He alleges that he was not allowed to call witnesses, and that Ross wrongfully found him guilty by relying solely on the incident staff report. As a result of the ruling, Simpson lost telephone and prison canteen[5] privileges for sixty (60) days.[6]

---

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Flores v. Livingston*, 405 Fed App'x 931, 932 (5th Cir. 2010) (holding that allegations made at a *Spears* hearing supersede claims alleged in the complaint).

[3]The contents of the hearing are set forth in Omnibus Order [41].

[4]*Id.* at 2.

[5]A prison canteen is a store within a correctional facility.

[6]*See* Omnibus Order [41] at 2-3.

Simpson also asserts that Defendant Hubert Davis, the Warden of SMCI Area I, "signed off" on the guilty ruling despite the alleged deficiencies of the disciplinary hearing. Simpson appealed the guilty ruling, and claims that Defendant Davis wrongfully denied his appeal.[7]

Finally, Simpson claims that SMCI Superintendent Ron King failed to properly supervise his subordinates. Specifically, Simpson alleges that King should have intervened to prevent Defendant Sims from ordering another inmate to assault him, and should have corrected the due process failures of Defendants Ross and Davis.[8]

Simpson seeks monetary damages for these alleged constitutional violations.[9]

## STANDARD

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Id.* at 323. The nonmovant is not required to respond to the motion until the movant properly supports its motion with competent evidence. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991), *cert. denied*, 503 U.S. 987 (1992).

In the event the moving party has made an affirmative showing that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with evidence that creates a

---

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

3

genuine issue for trial. *Celotex*, 477 U.S. at 330. In deciding a motion for summary judgment, the Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

<u>Defendants' Motion for Summary Judgment</u>

Defendants claim they are entitled to sovereign and qualified immunity from this action.

<u>Sovereign Immunity</u>

The Eleventh Amendment to the United States Constitution "bars an individual from suing a state in federal court unless the state consents to the suit or Congress has clearly and validly abrogated the state's sovereign immunity. *Kermode v. Univ. of Miss. Med. Ctr.*, 496 Fed. App'x 483, 487 (5th Cir. 2012) (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 336 (5th Cir. 2002)). The State of Mississippi has not consented to this suit, and Congress have never acted to abrogate Eleventh Amendment immunity for Section 1983 purposes. *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986) ("Section 1983 does not override the Eleventh Amendment bar.")

4

Sovereign immunity extends to any state agency or entity deemed to be "an arm of the state." *Perez*, 307 F.3d at 326. MDOC is considered an arm of the State of Mississippi. Miss Code Ann. § 47-5-1; *Scott v. Miss. Dep't of Corrs.*, No. 2:05cv2150, 2006 WL 1666258 at *2 (S.D. Miss. June 12, 2006). Accordingly, MDOC's officers and employees are, in fact, officers and employees of the state, and are likewise entitled to sovereign immunity from monetary damages. *See Am. Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself.")). Accordingly, Defendants in their official capacity have immunity against Simpson's claims under Section 1983.[10]

Qualified Immunity

Defendants have also raised the defense of qualified immunity, as Eleventh Amendment sovereign immunity does not apply to Simpson's claims for relief in Defendants' individual capacities. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fifth Circuit "has repeatedly held that objective reasonableness in a qualified immunity context is a question of law

---

[10]Notwithstanding Defendants' immunity in their official capacities for monetary damages, they are not entitled to sovereign immunity for prospective injunctive relief. This doctrine, set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), is an exception to the general prohibition of the Eleventh Amendment. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (holding that the *Ex Parte Young* exception applied to the Eleventh Amendment bar for claims for injunctive relief against defendants in their official capacities). However, because Simpson requests only monetary and not injunctive relief, his claims do not fall under this limited exception. *See* Omnibus Order [41] at 3.

for the court to decide, not an issue of fact." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). Courts evaluating Section 1983 claims should conduct a two-prong inquiry to determine whether defendants are entitled to qualified immunity. First, "whether a constitutional right would have been violated on the facts alleged," and second, "whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 14, 200 (2001)). In *Pearson v. Callahan*, the United States Supreme Court held that while the sequence of analysis set forth in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." 555 U.S. 223, 236 (2009). Thus, the Court is permitted to exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id.*

Once the defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon*, 305 F.3d at 323. "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). Because Defendants have raised the defense of qualified immunity in a motion for summary judgment, Simpson "can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity analysis]." *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Accordingly, this Court must examine the summary judgment record and determine whether Simpson has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Defendants' conduct violated an actual constitutional right for each claim, and whether their conduct was objectively unreasonable in light of clearly established law. *McClendon*, 305 F.3d at 323.

*Alleged Attack Ordered by Defendant Sims*

Simpson alleges Defendant Brenda Sims ordered another SMCI inmate to attack him on May 15, 2013. He alleges that on that day, inmate Wayne Sanders assaulted him with a sharp object, resulting in a laceration of Simpson's eye and a fractured nose. Simpson alleges that Sanders later informed him that Defendant Sims ordered the attack.

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. To establish a failure to protect claim, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). The plaintiff need not produce direct evidence of the official's knowledge but rather may rely on circumstantial evidence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

In this case, Simpson testified under oath that fellow inmate Wayne Sanders assaulted him, and that Sanders told him that Defendant Sims ordered the attack. Simpson has submitted several sworn affidavits from fellow inmates stating that they witnessed Sanders attack Simpson on May 15, 2013.[11] Simpson has also testified that Defendant Sims spread rumors that he was a "snitch," which Simpson alleges "is a death sentence in prison."[12] Finally, Simpson asserts that Brenda Sims

---

[11]*See* Affidavits [1-6], [56-3].

[12]*See* Affidavits of Patrick Simpson [1-6] at 1-2.

7

then accused him of instigating the fight with Sanders and later issued him an RVR in order to dispel any suspicion of her own involvement.[13] Simpson attaches a copy of the RVR to his Complaint, and it reflects that it was signed by Brenda Sims.[14]

In her Motion for Summary Judgment, Sims states that "a review of the Plaintiff's incident report history demonstrates that Plaintiff, in fact, attacked Sanders, and has a history of violent and disruptive acts." She also argues that "conclusory allegations, such as those made against Brenda Sims, are simply not competent summary judgment evidence."[15] Sims attaches a record of Simpson's SMCI incident report, which is a record of an inmate's violations of SMCI regulations. On May 15, 2013, there is an unsigned entry that reads: "Assaultive action against any person resulting in serious physical injury . . . assaulting offender Sanders."[16]

This brief, unsigned entry in the incident report directly contradicts the evidence submitted to the Court by Simpson, and does not address whatsoever his sworn allegation that Defendant Sims ordered Wayne Sanders to attack him. Furthermore, Sims argument that Simpson's claim is unsupported and conclusory ignores that fact that he has submitted his own sworn testimony, several sworn witness affidavits, and a document that suggests Sims's involvement with the incident. Sims submits no affidavits or other evidence in support of summary judgment as to this claim.

If Sims paid or ordered Sanders to assault Simpson, as Simpson alleges, this "obviously would rise to a level of deliberate indifference beyond that protected by qualified immunity." *Davis*

---

[13]*See* generally Complaint [1].

[14]*See* Rule Violation Report [56-2] at 6.

[15]*See* Motion [55] at 7.

[16]*See* Incident Report [54-1] at 3.

*v. Tucker*, 322 Fed. App'x 369, 370 (5th Cir. 2009) (holding that a genuine issue of material fact existed as to whether prison officer paid prisoners to assault an inmate, precluding summary judgment for prison officer on qualified immunity grounds). The Fifth Circuit has clearly held that a nonmoving party is not required to respond to a motion for summary judgment unless the moving party properly supports its motion with competent evidence. *Russ*, 943 F.2d at 59. Although Defendant Sims moved for summary judgment on this claim, her motion only briefly addresses Simpson's allegations and references only the unsigned incident report outlined above. With respect to this claim, Defendant Sims did not discharge her initial burden of establishing the absence of a genuine issue of material fact. Accordingly, for these reasons, the Court finds that there is genuine issue of material fact as to Sims's role, if any, in Simpson's physical altercation with Wayne Sanders. Accordingly, Defendant Brenda Sims is not entitled to summary judgment as to this claim.

### Deliberate Indifference to Medical Needs

Simpson alleges that he suffered physical injuries as a result of the attack by fellow inmate Wayne Sanders on May 15, 2013, including a laceration to his right eye and a fractured nose. Simpson alleges that Defendant Sims acted with deliberate indifference in denying his requests to go to the medical unit immediately after the attack, but admits that he was taken to the medical unit the next morning and that his injuries eventually healed.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). The test for deliberate indifference is "one of subjective recklessness" as defined in criminal law. *Farmer*, 511 U.S. at 837. A prison official acts with deliberate indifference only if he knows that the inmate faces a substantial risk of serious bodily harm and he disregards that risk

by failing to take reasonable measures to abate it. *Id*. Deliberate indifference is an "extremely high" standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756).  Unsuccessful medical treatment, acts of negligence, or medical malpractice do not establish deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Rather, the plaintiff must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). A delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Simpson's uncontradicted medical records reflect that he received prompt and substantial medical care following the physical altercation with Wayne Sanders. SMCI Dr. Charmaine McCleave examined Simpson on May 16, 2010, where she noted that he had a 3 mm laceration of his sclera,[17] but that vision was intact and there was no bleeding or oozing from the site. Dr. McCleave further noted that she "could not visualize [Simpson's] retina and would feel much better about it if he was evaluated by an Opthalmologist." Finally, Dr. McCleave noted that Simpson's nose was tender and swollen over the bridge. She prescribed eye drops and antibiotics, ordered an x-ray of Simpson's face, and requested a consult with a non-prison ophthalmologist.[18] An appointment with an ophthalmologist was scheduled at the Southern Eye Center in Hattiesburg, Mississippi, for May 24, 2013. Simpson's medical records show that he attended the appointment

---

[17]The Meriam-Webster Medical Dictionary defines the sclera as "the dense fibrous opaque outer coat enclosing the eyeball except the part covered by the cornea."

[18]*See* Medical Records [58] at 2.

without incident, that no follow-up visit was necessary, and that the only action recommended by the consulting physician was that Simpson be prescribed ciloxan.[19] Simpson returned to SMCI in good condition and without any new diagnoses.[20] "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). The Court notes that although Simpson has filed a motion for summary judgment, he does not brief this issue or offer evidence in rebuttal.

Moreover, Simpson does not allege that he was absolutely denied treatment for his injuries; rather, he alleges that medical treatment was delayed by a few hours as a result of Sims's initial refusal to send him to the medical unit. Simpson has failed to show that he suffered substantial harm as a result of the alleged delay. *See Easter*, 467 F.3d at 463 (holding that delay in medical care only implicates Section 1983 upon a showing that a substantial harm has resulted). In his pleadings, Simpson states that his nose is still painful and that he suffers from blurred vision and pain in his eye,[21] but he does not ascribe these lingering problems to the few hours delay in receiving treatment. Furthermore, at the *Spears* hearing in this case, Simpson testified that his injuries had healed,[22] and his uncontradicted medical records contain no indication that his injuries were not healing or healing abnormally.

The evidence before the Court reflects that Simpson received a prompt medical evaluation,

---

[19]Ciloxan is a topical, antimicrobial and antibacterial medication used to treat eye infections. *See* Ciloxan, DailyMed, U.S. National Library of Medicine, http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=1c292706-a900-4d6f-979e-9c42d6ff2fb2 (Last Visited May 20, 2015).

[20]*See* Medical Records [58] at 13.

[21]*See* Exhibit 1 [56-1] at 2.

[22]*See* Omnibus Order [41] at 2.

11

x-rays, prescription medication, and a consult from a non-prison doctor. Accordingly, for these reasons, the Court finds that Sims is entitled to judgment as a matter of law on this ground.

### Due Process Violations

Simpson complains that he was denied due process at his disciplinary hearing in that Defendant Ross refused him the opportunity to present witnesses, and that the guilty ruling was unsupported by the evidence. He also alleges that Defendant Davis denied him due process by "signing off" on the ruling and subsequently denying Simpson's appeal. In order to evaluate Simpson's claim, the Court must first address whether the Due Process Clause of the Fourteenth Amendment applies.

In *Sandin v. Conner*, the United States Supreme Court clarified that states may under certain circumstances, by adopting prison regulations, create liberty interests that entitle prisoners to Due Process Clause protection. 515 U.S. 472, 483-84 (1995). However, the Court also held that these interests are usually "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted). As noted by the Fifth Circuit, the *Sandin* decision "first laid down the principle that the Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

The Fifth Circuit has routinely held that the loss of privileges, the imposition of cell restrictions, and changes of custodial classification are simply changes in a prisoner's condition of confinement, and do not implicate due process concerns. *See Gaona v. Erwin*, 224 Fed. App'x 327,

12

328 (5th Cir. 2007) (holding that the loss of privileges does not implicate the due process clause); *Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003) (holding that a prisoner has no liberty interest in a custodial classification); *Madison*, 104 F.3d at 768 (holding that a prisoner's 30 days commissary and cell restrictions were penalties that did not "represent the type of atypical, significant deprivation in which a state might create a liberty interest."); *Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir. 1996) (holding that administrative lockdown is incident to the ordinary life of a prisoner).

In this case, Simpson merely alleges that he lost telephone and canteen privileges for sixty days as a result of the disciplinary hearing. As set forth above, such penalties do not implicate due process concerns. Accordingly, Simpson is not entitled to relief under Section 1983, and Defendants Ross and Davis are entitled to judgment as a matter of law.

### Failure to Supervise

Finally, Simpson alleges that SMCI Superintendent Ron King failed to properly supervise his subordinates, in that he did not intervene to stop Defendant Sims from ordering the attack on Simpson and did not correct Defendants Ross and Davis regarding their alleged due process errors at Simpson's disciplinary hearing.

A supervisor may be held liable to supervise or train a subordinate if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Farmer*, 511 U.S. at 837. In order for a plaintiff to establish deliberate indifference, he must show "a pattern of violations that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). "Without notice that a course of training is deficient in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011).

Simpson's complaint that King failed to correct the alleged due process violations committed by Defendants Ross and Davis is without merit. As outlined above, the penalties resulting from Simpson's disciplinary hearing do not implicate due process concerns. Accordingly, there is no "causal link" between any failure of King to train or supervise these Defendants and a violation of Simpson's rights. *See Hinshaw*, 785 F.2d at 1263.

Simpson's allegation that King should have stopped Brenda Sims from ordering Wayne Sander's attack is likewise inadequate, as he has failed to allege any facts showing that King was deliberately indifferent. There is no mention in Simpson's pleadings that Defendant Sims has a pattern of ordering attacks on SMCI inmates, or that Defendant King had any knowledge of the alleged attack prior to its occurrence. *See Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."). For these reasons, the Court finds that Defendant King is entitled to judgment as a matter of law.


Plaintiff's Motion for Partial Summary Judgment

14

In his Motion [56], Simpson simply repeats his original allegations regarding his disciplinary hearing, subsequent appeal and Defendant King's alleged failure to supervise his employees. Due to the analysis of these claims *supra*, the Court finds that Simpson's motion for partial summary judgment should be denied.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [54] should be GRANTED IN PART and DENIED IN PART, and that Plaintiff's Motion for Partial Summary Judgment [56] should be DENIED.  Accordingly,

IT IS, THEREFORE, ORDERED:

1.    That the Motion for Summary Judgment [54] ] filed by Defendants Brenda Sims, Hubert Davis, Ronald King, and Joy Ross is GRANTED IN PART and DENIED IN PART. Plaintiff's claim that Brenda Sims ordered inmate Wayne Sanders to attack the Plaintiff raises a genuine issue of material fact, and thus, summary judgment is denied as to that claim. All other claims against the Defendants are dismissed with prejudice;

2.    That the undersigned will schedule a hearing on the merits of Plaintiff's remaining claim at the appropriate time;

3.    That Plaintiff's Motion for Summary Judgment [56] is DENIED;

4.    That a separate judgment dismissing claims against Defendants Davis, King and Ross and the deliberate indifference claim against Brenda Sims will be filed in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED this the 26th of May, 2015.

s/ Michael T. Parker
United States Magistrate Judge

15